## Case No. 1,960.

BROOKS et al. v. PHOENIX MUT. LIFE INS. CO.

[16 Blatchf. 182;[1] 8 Ins. Law J. 740; 8 Reporter, 774.]

*Circuit Court, D. Vermont. April 15, 1879.*

LIFE INSURANCE — PARTICIPATING POLICY — DIVIDEND — CANCELLATION OF PREMIUM NOTES — REMOVAL OF CAUSES — ACT MARCH 3, 1875 — COSTS — RECOVERY LESS THAN $500.

1. A mutual life insurance company insured, by an endowment policy, the life of a husband for the sole benefit of his wife, in an amount payable to her on a day named. For four years the company accepted the notes of the husband as payment of one-half of the annual premium. The notes were given on the representation by the company that they would be paid by dividends. The notes pledged the policy and all payments which might become due thereon, to the company, for the payment of the notes. In a suit by the husband and wife, in the right of the wife, against the company, to recover the amount insured, the plaintiffs claimed that the dividends declared, if credited on the notes, would pay them in full. The defendant claimed that the amount due on the policy was the sum insured, less the amount due on the notes: *Held*, that the company was liable for the amount insured without any deduction for the unpaid notes.

2. The suit having been removed into this court, under the act of March 3d, 1875 (18 Stat. 470), it was *held*, under § 6 of that act, and § 968 of the Revised Statutes of the United States, that the plaintiffs were not entitled to costs, because their recovery was less than $500, exclusive of costs, but that they ought not to pay costs.

[See Coggill v. Lawrence, Case No. 2,957.]

[At law. Action by Samuel T. Brooks and Lucy C. M. Brooks, his wife, against the Phoenix Mutual Life Insurance Company upon an insurance policy. Judgment for plaintiff.]

Henry C. Ide, for plaintiffs.

Walter P. Smith and Luke P. Poland, for defendant.

WHEELER, District Judge. This is an action of assumpsit, upon an endowment policy of assurance upon the life of Samuel T. Brooks, and has been tried by the court

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

upon written waiver of a jury. The rights of the parties are to be determined upon the legal effect of the contracts in respect to this assurance, entered into by them. The principal contract was procured by Samuel T. Brooks, for the benefit of the other plaintiff, his wife. He was shown a circular of the defendant company, in which it was set forth, that one-half of the first four premiums would be payable in notes, after which dividends would be applied directly to the payment of premiums, and that: "In the settlement of all mutual policies a dividend will be allowed for each year on which the assured has received no dividend." The annual premium was fixed at two hundred and twenty-one dollars. He paid one hundred and ten dollars and fifty cents in cash, and executed his note for the same amount, payable in one year, with interest annually, at six per cent., in advance, which specified what it was for, and provided that the "policy, and all payments and profits which may become due thereon, are hereby pledged and hypothecated to said company for the payment of this note," and delivered it to the company. The policy was thereupon issued, dated April 6th, 1866. The operative part of it, material to the present inquiry, ran thus: "This policy of assurance witnesseth, that the Phoenix Mutual Life Insurance Company, in consideration of the representations made to them in the application for this policy, and of the sum of two hundred and twenty-one dollars to them in hand paid by Lucy C. M. Brooks, and of the annual premium of two hundred and twenty-one dollars to be paid on or before the sixth day of April, in every year during the continuance of this policy, do assure the life of Samuel T. Brooks, of St. Johnsbury, in the county of Caledonia, state of Vermont, for the sole and separate use and benefit of the said Lucy C. M. Brooks, in the amount of two thousand dollars, payable to the said Lucy C. M. Brooks, or her executors, administrators, or assigns, on the 6th day of April, 1878, and, in case the said assured shall not pay the said annual premiums on or before the several days hereinbefore mentioned for the payment thereof, then and in every such case the said company shall not be liable to the payment of the sum insured, or any part thereof; and this policy shall cease and determine." Before making the second annual payment, a doubt arose in the mind of Mr. Brooks, as to whether these notes would be deductible from the policy in case he should live till it should become due, and he wrote to the general agent of the company, inquiring how that would be, and received an answer stating, that, "in the settlement of all mutual policies, we allow dividends and they cancel the notes." Relying upon this statement, as well as upon what he had before read in the circular, he proceeded to make payments upon the policy in the remaining three of the first four years, giving notes, like the first, for one-half of the premiums, and paying the other half, with interest on the notes, in money. The dividends declared by the company in those four years were fifty per cent. of the amount of the premiums, and just equal to the amount of the notes. He received none of those dividends. After those years the premiums were settled in such manner that there is now no question about them. At the settlement of the last, a receipt was given, dated April 6th, 1877, in which it was stated, that, "said contract, with all its conditions, is hereby continued in force until the 6th day of April, 1878, and no longer. But, in case any note or notes given as part of cash premiums on said policy shall not be paid on or before maturity thereof, said policy shall at once become void, without further notice." In the year 1878 the company declared a dividend of twenty per cent. on the amount of premiums paid on policies of this class; they estimated that the three succeeding dividends would be of the same amount, and computed the amount due on the policy, by deducting the amount of the four notes, after applying four dividends of that amount upon them, and offered the amounts to the plaintiffs, which they refused, claiming the full two thousand dollars, and brought this suit to recover that amount, in the state court. After removal of the cause from that court, the plaintiffs received the amount which the defendants admitted to be due, with interest and costs to that time. The plaintiffs sue in the right of the wife, and claim that the notes given under the representations made in respect to their being given, should be considered as satisfied by the dividends declared in the years in which they were given, or by other dividends sufficient to cancel them, and that they are not collectible of any one; and that, if they are not so satisfied, and are still collectible of Mr. Brooks, they cannot reduce the amount which the wife is entitled to by the terms of the policy itself. The defendant claims that the premiums have not been paid but by the notes, and that they are made a charge upon the policy and the amount due thereon, by their express terms, by which the wife is bound.

The policy sets forth the undertaking of the company only. That was to pay the sum of two thousand dollars at the time specified, if the premiums should be paid. The right to dividends grew out of becoming a member of the company, and was not set forth in any written contract. There was no agreement to pay the premiums. The policy could not be continued in force, except for its value under the law, as being non-forfeitable, without paying them, but, whether they should be paid and it should be continued in full force, or payment should be omitted and it left to fall back to its existing value, was optional with Mr. and Mrs. Brooks, wholly. The statements in the prospectus and letter

of the agent were representations as to how the condition for keeping the policy on foot could be performed. They did not affect, nor profess to affect, the agreement of the company to pay if the condition should be performed. They bound the company to accept certain things as performance. The condition was performed as was represented would be accepted, what was done was accepted, and the acceptance was evidenced by the receipt of April 6th, 1877, by the terms of which the policy was continued in force until April 6th, 1878, when it fully matured, and the sum specified became due to the wife. There is nothing in the case which can, by any construction, or is claimed to, diminish the right of the wife to the two thousand dollars promised to be paid, except the giving the four notes by the husband, and his agreement contained in them, that the policy and all payments or profits which might become due thereon were thereby pledged and hypothecated to the company for the payment of the notes. By the charter of the defendant, which is a law of the state of Connecticut under which the defendant exists, (section 6,) it was provided, that such a policy as this, for the benefit of a married woman, should enure to her separate use and benefit, independently of her husband. And, by the law of the state of Vermont, where both the husband and wife reside, and where the contract was entered into by the agent of the defendant, and has its situs, the same provisions are made with respect to like policies. Gen. St. Vt. 472, § 23. By either law, therefore, as well as by the terms of the policy itself, the sum due on the policy belongs to the wife and not to the husband, and she could not be divested of her right to it except by some act that would bind her. She has never done anything herself that would qualify her right to it. It is not shown, unless it arises from the circumstances, that her husband was ever authorized to create any charge upon it for her. If any implication of agency would arise, he did not act nor assume to act under it. He executed the notes in his own name, without professing to act for any one else. Whatever right he had to the policy would be affected by his act, but he does not appear to have had any. He bound himself by his promise to pay contained in the notes, but not the property of his wife in the policy. So, without looking into the obligation on his part now to pay the notes, she is entitled to recover.

But, if the right to recover the balance due on the policy depended upon the obligation to pay the notes, the result might not be any different. They were executed and delivered to stand against dividends, in making up the several annual premiums. This was mutually understood between him and the company. They were all executed in view of the statement on the prospectus before quoted, that a dividend would be allowed for each year on which the insured had received no dividend.

The insured received no dividend for the years on which the notes were given. On each of those years a dividend of fifty per cent. was declared. The dividends declared are the ones he is entitled to. The company is bound to allow those dividends against the notes, to make good that representation. If it should do less it would not keep its faith. These dividends exactly equal the notes in amount, and exactly pay them. The last three of the notes were executed and delivered in reliance upon the letter of the agent, stating, that, in the settlement of all mutual policies, they allowed dividends and they cancelled the notes. That letter was written while dividends of fifty per cent. each on the premiums paid were being declared, and such dividends must have been those which he referred to.

It is argued, with plausibility, that as many dividends have been allowed as premiums have been paid, and as many as there were years in which premiums were paid, and which were as large as the profits would allow, and that thereby the representations were made good, although the dividends were not so large as the parties all expected. And it is, doubtless, true, that by becoming a member of such a mutual company a party would only be entitled to such dividends as the profits would warrant, although much less than expected and than it was held out they would be, if the right ones should be allowed. But here the company has allowed to this policy four dividends, each equal to that of the last year, and much smaller than the others. And there was nothing in the transaction to indicate that no dividends were to be allowed for four years, and then four were to be allowed for one year. If the dividends had been all alike, as they had generally been before, there would be no difference in proceeding in that mode, but, when there came to be a difference, the party had the right to have the proper ones reckoned.

The plaintiffs have relied upon other representations in the prospectus, to the effect, that such insurance would be a good investment, as such, of the money paid, sure to return the full amount with a good rate of interest. But such statements were merely commendatory expressions of opinion, to be relied upon at peril.

There is some doubt whether this cause was removable into this court at all. The test is the matter in dispute, which, in this class of cases, must exceed five hundred dollars. In this case, especially after the tender was made and received, it was considerably less than that. The tender was made before the removal, but is said, and, for aught that appears, correctly, not to have been received until after, and then, it appears, under a stipulation that the removability of the case should not be affected by it. Probably, the stipulation would not help the jurisdiction; but, there has been no motion made to remand the case, and, as the want of jurisdic-

tion is not clear, the cause is retained, although, when it appears, of course distinctly, it seems to be made, by the act of March 3, 1875 (18 Stat. 470), to determine the jurisdiction of the circuit courts of the United States, &c., the duty of the court to remand the case, of its own motion. But, in section 968 of the Revised Statutes of the United States, it is provided, that, in cases originally brought in a circuit court, in which the jurisdiction depends upon the amount in dispute, if the plaintiff recovers less than five hundred dollars, exclusive of costs, he shall not be allowed, but, at the discretion of the court, may be adjudged to pay, costs. In the act mentioned, it is provided, (section 6,) that, in all suits removed under its provisions, the circuit court shall proceed the same as if they had been originally commenced there, and the same proceedings had been had there, as had been had in the state court. This appears to include proceedings in respect to costs as well as the other proceedings in a cause. This cause was removed under that act, and comes within the provisions of it, and those of the section of the Revised Statutes cited. Under both, the plaintiffs are not entitled to recover costs, but no reason is seen for adjudging them to pay costs. The costs in the state court were paid as a part of the sum tendered, expressly for that purpose, and the part so tendered must rest as so applied, and cannot be taken out of the amount of the demand. The object of the statutes is to restrain bringing suits into the federal courts ·where the amount in dispute, not the amount claimed, is less than five hundred dollars. In this case, the amount really in dispute was always clearly less than that sum.

There must be a judgment for the plaintiffs, for the balance due, $294.58, without costs.